# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CRESTVIEW CLINICAL LABORATORY, LLC, a California Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 24-995 C |

## COMPLAINT

Plaintiff Crestview Clinical Laboratory, LLC, a California Limited Liability Company ("Plaintiff" or "Crestview") brings this action for damages against the United States of America based on the Department of Health and Human Services' ("HHS") and the United States Health Resources and Services Administration's ("HRSA") (collectively the "Agency") unjust and legally unsupported refusal to reimburse Crestview for emergency testing services rendered to the uninsured and timely submitted to the COVID-19 Uninsured Program ("UIP"). The Agency reversed and/or "paused" the release of obligated payments due and owing to Crestview for COVID-19 testing services furnished to America's most impoverished and vulnerable populations during the COVID-19 Pandemic. HRSA asserted such action was for the purpose of conducting a UIP assessment that was delayed for over two years. Significantly, however, even though the Agency issued its final Assessment findings in 2024, it has failed to honor its payment obligations to Crestview resulting in statutory, regulatory and contractual violations that caused significant damages to Crestview, amounting to at least $69 million.

1

# I. INTRODUCTION

1. In 2020, the World faced the unprecedented COVID-19 Pandemic. The new cases and deaths attributed to COVID-19 multiplied rapidly reaching more than 100 million reported cases and more than 2.5 million deaths a year later. COVID-19 became the third leading cause of death in the United States in 2020 and 2021.

2. The United States Centers for Disease Control and Prevention ("CDC") and National Institute for Health ("NIH") made it clear that all of our Nation's citizens could assist in reducing the spread of COVID-19 by, among other public health efforts, wearing masks, washing/sanitizing hands, maintaining physical distance and isolating when exposed to COVID-19. These actions alone, however, were not enough to stop the COVID-19 spread – testing was identified as critical and necessary to identify those exposed (often without symptoms) so they could isolate and reduce the spread and in order to provide earlier treatment that could reduce the risk of severe illness and death.

3. In 2020, NIH posted an article emphasizing that efforts to develop COVID-19 testing and make that testing available on a nationwide basis would help prevent the spread of COVID-19 and save lives. (NIH Leadership "*Why COVID-19 Testing is the Key to Getting Back to Normal*" (September 4, 2020).) NIH emphasized low-income racial and ethnic minorities and other vulnerable populations were disproportionately impacted by the COVID-19 pandemic and had the highest rates of infection, most complications, and bad outcomes. In order to effectively implement the testing strategy, the federal government established programs that would remove the significant financial barriers to testing faced by the Nation's most vulnerable populations.

4. During the COVID-19 pandemic, our Nation's health care providers and first responders put their lives on the line to develop COVID-19 testing and vaccines, to administer those tests and vaccines and to treat those infected with

COVID-19. In the face of shutdowns, social distancing and quarantines, laboratory collection and testing personnel worked diligently to help stop the spread of this deadly virus despite their continuing exposure to COVID-19.

5. Indeed, at the height of the pandemic, government officials called upon laboratories to step up their coronavirus testing efforts to increase capacity and ensure that every American would have access to testing. In response to this call, Crestview made substantial monetary investments to purchase high-throughput PCR testing systems. The new PCR testing systems with high automation allowed Crestview to significantly increase its testing capacity and ultimately provide support to the federal government's effort to return communities to work and school.

6. Against the accelerating national COVID-19 crisis, the federal government established and funded the HRSA COVID-19UIP. The Agency represented that the HRSA COVID-19 UIP would reimburse providers (who elected to participate in it) for providing COVID-19 testing, treatment and vaccine administration.

7. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") for "health care related expenses or lost revenues that are attributable to coronavirus." Pub. L. No. 116-136, 134 Stat. 281 (2020). HHS created the Provider Relief Act ("PRF") using these funds and these funds supported, in part, COVID-19 testing for the uninsured.

8. Additional funding used for the COVID-19 UIP was appropriated in the Families First Coronavirus Response Act, Pub. L. 116-127, 134 Stat. 178 (2020) ("FFCRA"); the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-139, 134 Stat. 620 (2020) ("PPPHCEA"); and the American Rescue Plan Act of 2021, Pub. L. 117-2, 135 Stat. 40 ("ARPA").

9. As part of the CARES Act, the FFCRA, the PPPHCEA and the ARPA (collectively "UIP Funding Laws"), HHS established the COVID-19 UIP to provide

claims reimbursement to eligible health care providers for testing uninsured individuals for COVID-19, treating uninsured individuals with a COVID-19 primary diagnosis, and for COVID-19 vaccine administration for the period commencing February 4, 2020.

10. "The CARES Act and subsequent statutes tasked the Secretary of HHS with 'reimburs[ing] through grants or other mechanisms, eligible health care providers for health care related expenses or lost revenues that are attributable to coronavirus.'"[1] CARES Act, 134 Stat. at 563; PPPHCEA, 134 STAT at 622-623.

11. "At the time the Congress enacted these laws, the American healthcare system as a whole was facing an existential crisis. The paramount goal for HHS and HRSA (collectively, "the Agency") was to get funds to providers nationwide as quickly and efficiently as possible. Accordingly, the CARES Act and subsequent statutes required [HHS and HRSA] to make payments 'in consideration of the most efficient payment systems practicable to provide emergency payment.'"[2] CARES Act, 134 Stat. at 563; PPPHCEA, 134 Stat. at 622-623.

12. Crestview is a CLIA-certified laboratory that provided COVID-19 testing services during the pandemic, including to those individuals covered by the HRSA COVID-19UIP. Significantly, during the COVID-19 Pandemic, Crestview was also a member of the California COVID-19 Testing Task Force. Crestview also worked with the State of California by providing timely reporting on positive COVID-19 cases to the California Department of Public Health in order to minimize the spread of COVID-19. Notwithstanding Crestview's timely and documented emergency testing services, the Agency has continued to withhold approximately

---

[1] Declaration of Alexandra Huttinger, Deputy Associate Administrator, Provider Relief Bureau, HRSA, HHS dated 9/6/23 and submitted in support of the Agency's Response to the Application for Preliminary Injunction in *Sana Healthcare Carrollton, LLC etc. v. Department of Health and Human Services et al*, Case No. CA 4:23-CV-738 (E.D. Tex.), paragraph 14.
[2] *Id.*

4

$69 million in UIP Obligated Payments (defined herein) due and owing to Crestview without providing any notice or opportunity to dispute such actions.

13. HRSA's contractors acknowledged acceptance of Crestview's COVID-19 UIP testing claims covering dates of service and submission between October 2020 and March 2022 (the "Claims"). Crestview is informed and believes that HRSA's contractors processed the Claims through the adjudicative process but were instructed by HRSA to reverse and/or pause payments to Crestview after it initiated an audit ("Assessment") of Crestview's compliance with the UIP terms and conditions. Thereafter, HRSA's contractors reversed electronic payment deposits and/or paused the release of the Claims' payments for over two years while HRSA delayed the Assessment with little to no explanation to Crestview.

14. Over a year after the Agency paused remittance of Crestview's UIP payments and closed the UIP claims portal, the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5 (June 3, 2023) ("FRA"), was enacted. The FRA rescinded certain unobligated appropriations made available under various laws, including UIP Funding Laws. (See FRA, Division B-Save Taxpayer Dollars, Title 1-Rescission of Unobligated Funds).

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action and venue is proper in this Court pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) ("Tucker Act") because Crestview brings claims for damages over $10,000 against the United States based upon the United States' violations of money-mandating statutes and regulations or alternatively, statutes and regulations that mandate payments be made by implication.

16. The Tucker Act is also the jurisdictional basis for Crestview's claims based on the Agency's breach of express contract or, in the alternative, implied-in-

fact contract and the implied covenant of good faith and fair dealing, all of which impose obligations that mandate the Agency pay Crestview for the unpaid Claims.

17. Adjudication and approval of Crestview's COVID-19 UIP testing services, including determination of the quantifiable amount due to Crestview, constituted HRSA's agreement and legal liability to pay pursuant to 31 U.S.C. § 1501(a). Since no further Congressional action was needed to establish a right to payment, the obligation to remit these payments to Crestview occurred by operation of law, regardless of budgetary resources or appropriations.

18. While Congress enacted the FRA on June 3, 2023, the FRA's rescission of unobligated UIP funds has no bearing on the adjudicated payments due and owing to Crestview which are obligated, not unobligated, funds.

19. The controversy is ripe because the Agency has failed and refused to release the reversed and/or paused payments that were obligated to be paid to Crestview for COVID-19 testing services rendered to HRSA COVID-19 UIP patients.

20. The actions and decisions of HHS and HRSA at issue in this action were conducted on behalf of the United States of America in the District of Columbia.

## III. PARTIES

21. Plaintiff, Crestview is, and was at all times relevant hereto, a limited liability company, organized and existing under the laws of the State of California with its principal place of business in Irvine, California.

22. The United States of America is the defendant in this action. HHS is a department of the United States government and oversees the activities of HRSA. HRSA is an operating division of HHS and the organizational component within HHS charged with the administration of the COVID-19UIP. HRSA's Provider

Relief Bureau ("PRB") administered the claims reimbursement to health care providers that provided emergency testing services.

## IV. FACTUAL ALLEGATIONS

### A. Crestview's Participation in HRSA's COVID-19 Uninsured Program.

23. On or about September 21, 2020, Crestview registered with the COVID-19 UIP to receive payments for the provision of COVID-19 testing services to the uninsured. Crestview entered into a contract with HRSA entitled "Terms and Conditions for Participation in the HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program" (the "Contract"). Crestview participated in the COVID-19 UIP from November 20, 2020, through March 22, 2022.

24. COVID-19 testing services included specimen collection, diagnostic and antibody testing and testing-related visits in certain provider settings. As part of the Contract, Crestview was required to, among other things, certify that (i) to the best of its knowledge, the patient had no health care insurance coverage; (ii) it would accept the COVID-19 Uninsured Program reimbursement as payment in full; and it would not balance bill the patient.

25. During this time, Crestview had over 70 employees and contracted workers who dedicated hundreds of thousands of hours to the COVID-19 Uninsured Program testing process during the height of the pandemic.

### B. HRSA's Reversal and Retention of Crestview's COVID-19 UIP Obligated Payments.

26. UnitedHealth Group ("UnitedHealth") was designated as the COVID-19 UIP administrator responsible for processing claims. Provider payments were facilitated through Optum Pay ACH ("Optum").

27. Following implementation of the HRSA COVID-19 UIP, HRSA and UnitedHealth presented a provider and facility-focused training webinar entitled "HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment and Vaccine Administration of the Uninsured," ("UIP Process Training") representing, *inter alia*, that the program would provide claims reimbursement for eligible COVID-19 testing rendered to the uninsured on and after February 4, 2020. The UIP Process Training expressly stated "Your role is critical. Ensure you are reimbursed" and provided instructions and requirements related to claims submission, adjudication and payment process, indicating that eligible claims for reimbursement would typically be processed and paid within 30 business days.[3] Moreover, HRSA expressly promised that HHS would provide claims reimbursement to health care providers for testing uninsured individuals for COVID-19.

28. Crestview submitted claims for reimbursement of COVID-19 testing services to HRSA's contractor, UnitedHealth. UnitedHealth issued temporary patient IDs for Crestview's billed claims. Crestview complied with all Contract terms and conditions including, without limitation, obtaining patient attestations of their insured or uninsured status on Requisition forms. Further, Crestview billed a patient's valid third-party insurance for COVID-19 testing services where available, including in situations where UnitedHealth provided verified third-party coverage.

29. Crestview is informed and believes that, commencing in January 2022, the Agency's contractors, UnitedHealth/Optum ceased making payments to Crestview for services already rendered, approved and billed at the direction of

---

[3] *HRSA COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration of the Uninsured*, https://public3.pagefreezer.com/content/1719008671653/health-resources-and-services-administration/11-12-2023T14:31/https://www.hrsa.gov/sites/default/files/hrsa/provider-relief/covid-uninsured-program-webinar.pdf (last accessed archived content on June 27, 2024).

8

HRSA and/or HHS. Crestview submitted these claims between October of 2020 and March of 2022 and they constitute over $69 million in obligated funds.

30. The $69 million includes payments that were deposited into Crestview's bank account and improperly reversed. On January 24 through January 28, 2022, without notice, explanation or opportunity to dispute the Agency's actions, HRSA's contractor took back several deposits to Crestview's bank accounts, reversing and recouping over $3.4 million paid to Crestview. These reversed deposits relate to claims billed by Crestview between January and December 2021, all months before the Claims Shut-Down Date. HRSA has paused these payments for as long as two and a half years.

31. The $69 million includes claims that identified by HRSA's contractor as paid but, to the contrary, were never paid to Crestview. On January 31 and February 1, 2 and 3, 2022, without notice, explanation or opportunity to dispute the Agency's actions, HRSA's contractor provided payment tracking numbers for payments purportedly made in an amount of over $3.6 million to Crestview, however, such payments were never received by Crestview. These allegedly paid claims were billed by Crestview between January 2021 and January 2022, more than two months prior to the Claims Shut-Down Date. HRSA has paused these payments for as long as two and a half years.

32. On or about March 15, 2022, HRSA announced that the COVID-19 UIP would stop accepting claims related to testing and treatment at 11:59 p.m. on March 22, 2022 ("Claims Cut-Off Date") and for vaccines on April 5, 2022, alleging it had exhausted its funding.

33. The Agency's actions to reverse and/or pause payments to Crestview resulted in the Agency's retention of approximately $69 million in obligated funds ("UIP Obligated Payments") which are due and owing to Crestview for COVID-19 Uninsured Program testing services already completed, submitted prior to the HRSA

COVID-19 Uninsured Program Claims Cut-Off Date, and approved for payment by HRSA. In fact, as stated by the HHS, Office of Inspector General ("OIG") in its July 2023 HRSA audit report, "[e]ven though HRSA was no longer accepting UIP claims, HRSA's contractor was continuing to adjudicate and pay claims that were submitted before the program submission deadlines."[4]

### C. HRSA's COVID-19 UIP Assessment Used to Pause Obligated Payments.

34. In a letter dated April 20, 2022 from Stephanie Sowalsky, CPA, HRSA notified Crestview that it was selected for a "HRSA COVID-19 Uninsured Program Assessment" to assess compliance with the Contract, including the terms & conditions (the "Assessment Letter").

35. The Assessment Letter requested the submission of records related to a list of 262 claims and other business records. The Assessment Letter further provided that Guidehouse, a HRSA contracted firm, would be performing the Assessment and identified Karen Gudio of Guidehouse as Crestview's contact person. The Assessment Letter, however, did not describe HRSA's assessment process including how and when it would provide findings to the provider, nor did identify any rebuttal or appeal process.

36. Crestview promptly complied with all of HRSA's information requests related to the Assessment and provided all requested records by May 2022. At that time, HRSA's auditors confirmed to Crestview that HRSA had all required information.

37. On July 26, 2022, when questioned about whether the Assessment might resolve the payments removed from Crestview's bank accounts, Jami Jeffrey,

---

[4] *HRSA Made COVID-19 Uninsured Program Payments to Provider on Behalf of Individuals Who Had Health Insurance and for Services Unrelated to COVID-19*, (A-02-21-01013) (July 2023), fn. 10., https://oig.hhs.gov/documents/audit/6536/A-02-21-01013-Complete%20Report.pdf (last accessed on June 27, 2024).

CIA, stated that the Assessment was a separate issue from the reversed payments due and owing to Crestview. While Crestview made numerous repeated attempts thereafter to reach out to HRSA and its auditors for further information regarding the status of the Assessment and the basis for withholding Crestview's COVID-19 UIP Obligated Payments and the expected release date, HRSA and its auditors failed and refused to respond to Crestview.

38. On August 18, 2022, HRSA responded to Crestview counsel's request for information on the payment reversals indicating "[t]hank you for your inquiry regarding your client's participation in the Health Resources and Services Administration (HRSA) COVID-19 Uninsured Program (Uninsured Program). As you know, Crestview Clinical Laboratory was selected for an assessment to determine compliance with the Terms and Conditions of the Uninsured Program and other legal requirements. As part of that process, HRSA instructed its contractor to pause or reverse processing your client's pending claims. Once the assessment for your client is complete, HRSA will review the payment pause status for your client. If the payment pause is released, eligible claims may be paid, subject to the availability of funds."

39. On July 13, 2022, HRSA's Lead Auditor on the Assessment, Jami Jeffrey, CIA, advised Crestview that it would notify it of the Assessment results in approximately September of 2022.

40. On November 18, 2022, Crestview reached out to Stephanie Sowalsky, CPA, Program Integrity Branch Chief, Rebecca Desrocher, Director of Program Integrity and Jami Jeffrey, PRB Assessment Liaison regarding the status of the Assessment, explaining the significant financial hardship caused by the unsupported retention of Crestview's UIP Obligated Payments.

41. On March 3, 2023, HRSA responded to the November 18, 2022 letter, with a general e-mail notifying Crestview that the Assessment was ongoing. In its

response, HRSA acknowledged that amounts due to Crestview were being withheld pending the Assessment process. HRSA again stated that "as part of the assessment process, HRSA instructed [UnitedHealth] to pause payments to Crestview." HRSA further represented that once the Assessment was complete, the payment pause status would be reviewed and if the payment pause was released, eligible claims may be paid.

42. Crestview submitted a Freedom of Information Act ("FOIA") request to HRSA on February 6, 2023, including records related to the Assessment and funds reversed and/or withheld from Crestview. In March of 2024, HRSA requested and received a fee estimate deposit for the records on or about March 21, 2024. However, HRSA has never provided records in response to the FOIA request despite many representations that it would do so, including its most recent statement on March 14, 2024 that HRSA anticipated responding to the FOIA request by the close of business on April 26, 2024, if not sooner.

43. As of October 2023, HRSA had not provided any Assessment findings nor had it paid Crestview the wrongfully reversed and/or withheld obligated funds. Therefore, on October 10, 2023, Crestview filed a lawsuit against HHS and HRSA in the U.S. Federal Court for the Central District of California, seeking mandamus and declaratory relief directing HHS and HRSA to immediately issue the delayed Assessment findings and to release and pay Crestview the reversed and/or paused obligated funds (see California Central District Court, Case No. 8:23-cv-1913) ("Central District Court Complaint"). This action was dismissed without prejudice on June 21, 2024.

44. On January 10, 2024, more than 20 months after Crestview's receipt of the Assessment Letter and more than 15 months after HRSA indicated it would issue the Assessment results, Crestview finally received HRSA's preliminary Assessment findings ("Preliminary Findings") which only related to Crestview

claims purportedly adjudicated and paid to Crestview and not to the obligated claims that have not been paid to Crestview.

45. HRSA delayed the issuance of the Preliminary Findings until after the Central District Court Complaint was filed on October 10, 2023. HRSA did not issue its final Assessment report until April 15, 2024 ("Final Report"). During the over two years HRSA took to conduct the Assessment and issue the Final Report, it unlawfully retained approximately $69 million in Obligated Payments due and owing to Crestview and it continues to do so with full knowledge that the scope of the Assessment (adjudicated claims paid to Crestview) is unrelated to paused unpaid claims.

## **CLAIMS FOR RELIEF**

### COUNT ONE

### (Breach of Express Contract)

46. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

47. Pursuant to the Contract, HRSA agreed to reimburse Crestview generally at 100 percent of Medicare rates (unless there was no Medicare rate, in which case, a calculated average would be used) for the COVID-19 testing services provided to uninsured individuals.

48. HRSA contracted with UnitedHealth and Optum to adjudicate and pay claims submitted by laboratories, including Crestview, for COVID-19 testing services rendered to UIP patients.

49. HRSA published "FAQs for COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment and Vaccine Administration" (the "UIP FAQs") addressing the details of the HRSA UIP. The FAQs stated: "[t]he Administration is providing support to health care providers fighting the COVID-19 pandemic through the COVID-19 Claims Reimbursement

to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program (HRSA COVID-19 Uninsured Program). This program provides reimbursements on a rolling basis directly to eligible providers for claims attributed to the testing, treatment, or vaccine administration for COVID-19 for uninsured individuals." The FAQs also represented that the "majority of claims are reimbursed within 30 days."[5]

50. Crestview submitted claims for the COVID-19 testing services rendered between October 2020 and March 2022, all of which were accepted by UnitedHealth and, for which, UnitedHealth issued patient IDs. The expected UIP reimbursement for the Claims was over $69 million.

51. UnitedHealth represented that claims would be processed and paid within 30-45 calendar days of submission and HRSA confirmed in 2023 that most claims were reimbursed within 30 days of submission. Crestview received payments from the UIP on average within 19 business days from the date it submitted the claims.

52. HRSA breached the Contract by imposing a pause on the Claims payments due to Crestview while it intentionally delayed the Assessment process for over two years and by failing and refusing to pay Crestview at least $69 million due and owing to it for testing services rendered to the COVID-19 UIP.

53. Notably, Crestview made substantial monetary investments to purchase high-throughput PCR testing systems to meet the UIP testing demands, was forced to lay off its workforce and was unable to pay its subcontractors. As a result of the Agency's material breach of the Contract including, its failure to timely pay

---

[5] *HRSA FAQs for COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment and Vaccine Administration* https://public3.pagefreezer.com/browse/health-resources-and-services-administration/11-12-2023T14:31/https://www.hrsa.gov/provider-relief/about/covid-uninsured-claim/faq (last accessed archived content on June 27, 2024).

Crestview amounts due and owing to it, Crestview incurred additional consequential damages.

54. As a result of the Agency's material breach of the Contract, Crestview has been damaged in the amount of at least $69 million, together with consequential damages it sustained as a result of the Agency's breach, interest, costs of suit and such other relief as this Court deems proper.

## COUNT TWO

### (Breach of Implied-in-Fact Contract)

55. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

56. In the alternative, Crestview entered into a valid implied-in-fact contract with the Agency regarding its obligation to reimburse Crestview for COVID-19 testing services furnished to the uninsured population.

57. During the COVID-19 Pandemic, the United States urgently sought the services of health care providers for testing, vaccines and treatment for the uninsured population in order to stop the spread of COVID-19, offering to reimburse them for such services at Medicare rates. Crestview responded to the Agency's offer, invested heavily in labor, equipment and technologies, including the purchase of high-throughput PCR testing systems with high automation that allowed for significant increases in testing capacity, and agreed to participate in the HRSA COVID-19 UIP by furnishing testing services to the uninsured.

58. The parties' agreement is confirmed by the parties' conduct and performance following Crestview's attestation to the terms and conditions for participation and registration in the online portal.

59. The contract was authorized by representatives of the Agency who had actual authority to bind the United States and was entered into with the mutual assent and consideration by Crestview and the Agency.

60. Crestview provided a real and substantial benefit to the Agency by agreeing to participate in the UIP and delivering timely COVID-19 testing services to the uninsured. Crestview's significant equipment and technology investments resulted in it being able to perform 26,000 UIP tests per day. Crestview committed to providing UIP COVID-19 test results within 24 to 48 hours and 99% of its test results were provided within 24 hours. Significantly, Crestview was one of only a few laboratories in the United States that turned around tests in 24 hours.

61. Crestview has satisfied and complied with its obligations and/or conditions under the implied-in-fact contract including, but not limited to, attestations that, to the best of its knowledge, the patients were uninsured and that it was not balance billing UIP patients.

62. Even assuming, arguendo, that HRSA contends the UIP ran out of funds and/or that UIP funds are no longer available due to the FRA's rescission of unobligated UIP funds in June of 2023, such contentions are without merit and do not abrogate the Agency's contractual obligations to remit at least $69 million in payments to Crestview for testing services rendered and billed and claims accepted by the Agency prior to the UIP Claims Cut-Off Date.

63. HRSA breached the implied-in-fact contract by reversing and/or imposing a pause on the Claims payments while it delayed the Assessment process for more than two years, and by now failing and refusing to pay Crestview at least $69 million due and owing to it for UIP COVID-19 testing services.

64. As a result of the Agency's material breach of the implied-in-fact contract, Crestview has been damaged in the amount of at least $69 million, together with other losses it sustained as a result of the breach, interest, costs of suit and such other relief that this Court deems just and proper.

# COUNT THREE

## (Breach of the Implied Covenant of Good Faith and Fair Dealing)

65. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

66. The covenant of good faith and fair dealing is implied in every contract, express or implied, including contracts with the federal government. The covenant imposes obligations on the parties including, the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party to receive the "fruits of the contract."

67. The Contract created the reasonable expectation that Crestview would diligently and timely furnish COVID-19 testing services to the UIP and that the Agency would timely reimburse Crestview for rendering such testing services.

68. Crestview performed its obligations under the Contract by furnishing timely COVID-19 testing services to the uninsured. Moreover, Crestview and its laboratory collection and testing personnel diligently furnished these testing services to help stop the spread of this deadly virus despite their continuing exposure to COVID-19.

69. The Agency, however, unfairly prevented Crestview from receiving its benefits under the Contract.

70. The Agency initiated the Assessment in April of 2022, representing that it would be completed in approximately September of 2022. The Agency did not notify Crestview of the basis for its reversal of payments and/or failure to remit payment for outstanding claims until August of 2022, seven months after the initial pause/reversal, when the Agency finally responded, simply indicating that it had instructed its contractor to pause or reverse payments during the Assessment.

71. The Agency failed to honor its contractual obligations and acted in a way that was designed to injure or destroy Crestview's rights to receive the benefits

under the Contract *i.e.,* at least $69 million in payments due for testing services furnished and claims submitted and adjudicated well before the March 2022 UIP Claims Cut-Off Date. The Agency acted in bad faith in violation of the covenant by failing to timely remit payment for valid UIP claims without a contractual or legal basis to do so.

72. The Agency breached the implied covenant of good faith and fair dealing by taking several arbitrary and unreasonable actions including, but not limited to:

(a) intentionally delaying the April 20, 2022 Assessment which addressed paid claims for more than two years in order to avoid paying Crestview for COVID-19 UIP testing services rendered, submitted and processed before the UIP Claims Cut-off Date;

(b) implementing a legally unsupported reversal and/or "pause" on approximately $69 million in payments due and owing to Crestview for COVID-19 UIP testing services while it conducted the Assessment; and

(c) improperly relying on the FRA's June 2023 rescission of unobligated UIP funds to now support payment denial of at least $69 million in obligated funds.

73. As a direct and proximate result of the above breaches of the covenant of good faith and fair dealing, Crestview has been damaged in the amount of at least $69 million.

## COUNT FOUR

**(Violation of Money Mandating Statutes and Regulations to Reimburse Providers for COVID-19 UIP Testing Services)**

74. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

75. The Agency was mandated to reimburse Crestview, an eligible UIP health care provider, for allowable testing services.

76. As part of its obligations under the UIP Funding Laws, the Agency was required to pay Crestview for emergency testing services rendered and, for which claims were submitted, prior to the UIP Claims Cut-Off Date.

77. Alternatively, the Agency created a regulatory framework whereby the UIP Funding Laws, the Terms and Conditions, UIP Process Training, UIP FAQs and guidelines and website together with Crestview's satisfaction of the UIP statutory and regulatory requirements mandate the Agency to reimburse Crestview's claims.

78. As of the filing of this action, the Agency has failed, without justification, to pay Crestview at least $69 million due and owing to it for COVID-19 UIP testing services. The Agency's intentional delay and failure to timely pay Crestview for testing services rendered prior to the UIP Claims Cut-Off Date is a violation of the UIP Funding Laws and Agency regulations that mandate reimbursement of the claims due and owing to Crestview. Crestview has been significantly harmed by the Agency's failure to comply with the statutory and regulatory requirements.

79. Crestview has the right to recover damages based on the Agency's violation of statutory and regulatory requirements mandating payment of the Claims, whether express or by implication, and Crestview's satisfaction of those requirements.

## **PRAYER FOR RELIEF**

WHEREFORE, Crestview respectfully requests this Court to enter judgment in its favor and against Defendant and:

1. Award damages sustained by Crestview, in the amount of at least $69 million, together with any losses sustained as a result of Defendant's breach;

2. Award Crestview such additional damages and other monetary relief as is available under applicable law;

3. To the extent available, award Crestview pre-judgment and post-judgment interest;

4. To the extent available, award available attorneys' fees and costs to Crestview; and

5. Award such other and further relief to Crestview as the Court deems just and proper.

DATED: June 27, 2024                     Respectfully submitted,

*/s/ Elaine F. Harwell*
Elaine F. Harwell
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Email: elaine.harwell@procopio.com
Counsel for Plaintiff

OF COUNSEL:
Diane M. Racicot
David Gouzoules
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
diane.racicot@procopio.com
david.gouzoules@procopio.com