IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CRESTVIEW CLINICAL LABORATORY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 24-995<br>(Judge Robin M. Meriweather) |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

*Attorneys for the United States*

OF COUNSEL

TAMARA CLARK
SUZANNE YURK
National Complex Litigation and
Investigations Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

February 21, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. The Documents Included In The Appendix To Our Motion Are Properly Considered On A Motion To Dismiss ........ 1

II. Crestview's Response Confirms That Its Case Rises And Falls As A Contract Claim ........ 2

III. Crestview Fails To Demonstrate That It Has Plausibly Alleged The Formation And Breach Of A Contract Obligating HRSA To Reimburse Any Additional Claims ........ 4

A. The UIP Terms And Conditions Do Not Obligate HRSA To Pay Crestview's Claims ........ 5

B. Crestview Fails To Demonstrate That It Plausibly Pled Each Element Necessary To Contract Formation ........ 7

1. Crestview Fails To Rebut That It Did Not Plausibly Allege An Unambiguous Offer Or Acceptance By HRSA To Pay Crestview's Claims ........ 8

2. Crestview Fails To Rebut That It Did Not Plausibly Allege Consideration For HRSA To Pay Crestview's Claims ........ 10

3. Crestview Fails To Rebut That It Did Not Plausibly Allege That Anyone With Actual Authority Bound HRSA To Pay Crestview's Claims ........ 14

4. Crestview Fails To Rebut That It Did Not Plausibly Allege That HRSA Intended To Be Contractually Bound To Pay Crestview's Claims ........ 17

IV. Crestview Cannot Sidestep The Consequences Of The Fiscal Responsibility Act ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acevedo v. United States*,
824 F.3d 1365 (Fed. Cir. 2016)....4

*Algonac Mfg. Co. v. United States*,
428 F.2d 1241 (Ct. Cl. 1970)....13, 14

*Anderson v. United States*,
344 F.3d 1343 (Fed. Cir. 2003)....9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Chattler v. United States*,
632 F.3d 1324 (Fed. Cir. 2011)....18

*City of Cincinnati v. United States*,
153 F.3d 1375 (Fed. Cir. 1998)....14

*Cutler-Hammer, Inc. v. United States*,
441 F.2d 1179 (Ct. Cl. 1971)....6

*Dimare Fresh, Inc. v. United States*,
808 F.3d 1301 (Fed. Cir. 2015)....1, 2

*D & N Bank v. United States*,
331 F.3d 1374 (Fed. Cir. 2003)....17, 18

*El Centro v. United States*,
922 F.2d 816 (Fed. Cir. 1990)....11, 12

*Estate of Bogley v. United States*,
514 F.2d 1027 (Ct. Cl. 1975)....11

*Gulley v. United States*,
150 Fed. Cl. 405 (2020)....1

*H. Landau & Co. v. United States*,
886 F.2d 322 (Fed. Cir. 1989)....14

*Laudes Corp. v. United States*,
86 Fed. Cl. 152 (2009)....16

*Linear Tech. Corp. v. Micrel, Inc.*,
275 F.3d 1040 (Fed. Cir. 2001)....................13

*Melwood Horticultural Training Ctr., Inc. v. United States*,
151 Fed. Cl. 297 (2020)....................3, 6

*Monzo v. United States*,
2013 U.S. Claims Lexis 1862 (Fed. Cl. Nov. 27, 2013)....................4

*Metzger, Shadyac & Schwarz v. United States*,
12 Cl. Ct. 602 (1987)....................11

*OAO Corp. v. United States*,
17 Cl. Ct. 91 (1989)....................10

*Phila. Auth. for Indus. Dev. v. United States*,
114 Fed. Cl. 519 (2014)....................3

*Price v. Panetta*,
674 F.3d 1335 (Fed. Cir. 2012)....................4

*Roberts v. United States*,
745 F.3d 1158 (Fed. Cir. 2014)....................4

*Rocky Mt. Helium, LLC v. United States*,
841 F.3d 1320 (Fed. Cir. 2016)....................2

*Silverman v. United States*,
679 F.2d 865 (Ct. Cl. 1982)....................9, 10

*Sin Hang Lee v. United States*,
142 Fed. Cl. 722 (2019)....................15, 18

*Sin Hang Lee v. United States*,
819 F. App'x 908 (Fed. Cir. 2020)....................15

*Sommers Oil Co. v. United States*,
241 F.3d 1375 (Fed. Cir. 2001)....................15, 17

*Stephens v. United States*,
884 F.3d 1151 (Fed. Cir. 2018)....................1

*St. Bernard Parish Gov't v. United States*,
134 Fed. Cl. 730 (2017)....................11, 12, 13

*Terry v. United States*,
103 Fed. Cl. 645, 652 (2012)....................20

*Thermalon Indus. v. United States*,
34 Fed. Cl. 411 (1995) ....................19

*Thomson v. United States*,
357 F.2d 683 (Ct. Cl. 1966) ....................9

*Trauma Serv. Grp. v. United States*,
104 F.3d 1321 (Fed. Cir. 1997)....................7, 14, 15

*Woll v. United States*,
45 Fed. Cl. 475 (1999) ....................11

*XP Vehicles, Inc. v. United States*,
121 Fed. Cl. 770 (2015) ....................18

RULES AND REGULATIONS

RCFC 1 ....................5

FAR 1.602-1 ....................16

HHSAR 301.602-3....................16

OTHER AUTHORITIES

1 Williston, Contracts § 102 (1957)....................11

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1357 (3d ed. 2004) ....................1, 2

Restatement (Second) of Contracts § 24....................9

"National Health Interview Survey," available at https://www.cdc.gov/nchs/data/
nhis/health_insurance/TrendHealthInsurance1968_2023.pdf ....................9

Cleveland Clinic, "PCR Test," available at https://my.clevelandclinic.org/health/
diagnostics/21462-covid-19-and-pcr-testing ....................9

Pursuant to Rule 7.2(b)(2) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this reply in support of our motion to dismiss. Crestview's response, ECF 15 (Resp.), confirms two key things: (1) that its claims rise and fall on a breach of contract theory, and absent a contract with the United States, Crestview's case must fail; and (2) that Crestview has not plausibly alleged the formation of a contract obligating the United States to pay any additional claims. As such, the complaint should be dismissed.

## ARGUMENT

### I. The Documents Included In The Appendix To Our Motion Are Properly Considered On A Motion To Dismiss

Crestview first argues that the Court may not consider—at least without converting the pending motion into one for summary judgment—two documents included in the appendix to our motion to dismiss: (1) the letter informing Crestview that HRSA has paused the processing of any pending or new claims while it performs an assessment of Crestview's previously paid claims (as dictated by its standard operating procedures), and (2) the resulting assessment report. Resp. 10–11; *see* A104–137; *see also* A100–03. Not so.

At the outset, Crestview fails to differentiate between a motion to dismiss for lack of subject matter jurisdiction from one for failure to state a claim. In resolving a jurisdictional challenge, the Court is permitted to make fact findings and is not, therefore, limited in what evidence can be considered. *See Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018); *Gulley v. United States*, 150 Fed. Cl. 405, 411 n.1 (2020) (collecting cases).

And even with respect to motions to dismiss for failure to state a claim, "[a]lthough [the Court] primarily consider[s] the allegations in a complaint," it is "not limited to the four corners of the complaint" and "may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Dimare Fresh, Inc. v.*

*United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (last alteration in original, quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *see Rocky Mt. Helium, LLC v. United States*, 841 F.3d 1320, 1325–26 (Fed. Cir. 2016) ("The Supreme Court has ruled that a court 'must consider the complaint in its entirety, … in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"). Crestview recognizes this standard—Resp. 10—but misapplies it.

Crestview's complaint repeatedly discusses the "pause" that HRSA imposed on the processing of Crestview's claims and the communications surrounding that "pause." *E.g.*, Compl. p. 1, ¶¶ 13, 30–31, 34–45. Indeed, Crestview specifically pleads this "pause" as an allegation of breach. Compl. ¶¶ 52, 63, 72(b). It is difficult to imagine how the letter informing Crestview of the processing pause that, therefore, lies at the very heart of Crestview's allegations could be anything other than "incorporated by reference or integral to the claim." The resulting assessment that HRSA performed also features prominently in Crestview's complaint. *E.g.*, Compl. p. 1, ¶¶ 34–45, 72.[1] Thus, the Court is free to consider both these documents without converting the motion to one for summary judgment.

In any event, neither document is necessary to compel dismissal here, and the Court can and should dismiss Crestview's complaint even if it chooses not to consider these two documents.

## II. <u>Crestview's Response Confirms That Its Case Rises And Falls As A Contract Claim</u>

Although Crestview's complaint purported to plead four different causes of action, its response defends only an alleged breach of contract claim. Thus, the Court can dismiss Counts III and IV on the basis of Crestview's silence alone.

[1] The Court need not, of course, decide to what extent Crestview's purported "heroism," Resp. 5, 18–19, 30–31, is marred by Crestview's non-compliance with program requirements, submission of ineligible claims, or otherwise concerning activity, as identified by HRSA, in order to resolve the pending motion.

First, we explained in our motion that Crestview fails to state a claim in Count III—its standalone breach of the good faith and fair dealing allegations. *See* MTD, ECF 12, Section III.B. Crestview presents no argument defending those allegations, thereby conceding their dismissal. *Phila. Auth. for Indus. Dev. v. United States*, 114 Fed. Cl. 519, 527–28 (2014) ("The court construes plaintiff's silence regarding the merits of defendant's argument . . . as [a] concession as to the validity of defendant's position. Accordingly, plaintiff has waived its arguments . . . and the court need not consider it further."); *Melwood Horticultural Training Ctr., Inc. v. United States*, 151 Fed. Cl. 297, 309–10 (2020) (collecting cases).

Second, we also explained in our motion that the appropriations laws enacted by Congress—that were the source of the funding HRSA used to make reimbursements under the UIP—are not *themselves* money-mandating and therefore cannot be an independent basis for this Court's jurisdiction. *See* MTD Section II. Crestview again, offers no argument to the contrary, therefore conceding the point. Instead, Crestview argues only that the terms and conditions and HRSA's other public statements regarding the program create an alleged obligation to pay Crestview. *See* Resp. 26–29.

That is, Crestview collapses its argument on Count IV ("Violation of Money Mandating Statutes and Regulations to Reimburse Providers for COVID-19 UIP Testing Services") into an "agreement" it claims it had with the Government, Resp. 29, *i.e.* its breach of contract theory. Crestview further confirms as much in the standard of review it advances: the *only* jurisdictional basis and standards that Crestview invokes are for this Court's "jurisdiction over express or implied contract(s) with the United States." Resp. 8. Thus, Crestview's response confirms that it does not have a claim under a standalone money-mandating source of law—its claims in this

case rise and fall on its breach of contract theory—and Count IV should be dismissed.[2]

III. Crestview Fails To Demonstrate That It Has Plausibly Alleged The Formation And Breach Of A Contract Obligating HRSA To Reimburse Any Additional Claims

At the outset, it is telling that the drumbeat of Crestview's response is to emphasize not the factual allegations supporting its complaint, but rather how little, and how superficially, Crestview believes it can state its claim in the hopes that it can then go fishing for discovery. *See*, *e.g.*, Resp. 11, 22, 26, 29. But although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). That is, although the threshold to survive a motion to dismiss is, relatively speaking, low—Crestview's burden would only increase going forward—it remains meaningful. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation" at all and the "plausibility standard" applied to the true factual allegations in the complaint "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quotation marks omitted).

Moreover, the Supreme Court has recognized, and emphasized, that motions to dismiss

[2] Crestview's focus on a contractual obligation is ultimately not surprising as none of the documents it points to as purportedly constraining the vast discretion granted to the Secretary by Congress can fairly be characterized as regulations. But as the Federal Circuit has clarified, documents "not akin to formal agency rules or binding written directives … cannot constitute a" money-mandating source of law under the Tucker Act. *Acevedo v. United States*, 824 F.3d 1365, 1370 (Fed. Cir. 2016) (distinguishing *Roberts v. United States*, 745 F.3d 1158 (Fed. Cir. 2014)); *cf. Price v. Panetta*, 674 F.3d 1335, 1340 (Fed. Cir. 2012) ("Mr. Price's claim … turns on an interpretation of the governing statute and regulations."); *Monzo v. United States*, 2013 U.S. Claims Lexis 1862, at *8 (Fed. Cl. Nov. 27, 2013) (award program at issue implemented in an official manual as directed by regulation). Moreover, the very documents Crestview points to further conditioned reimbursement "to eligible claims, as determined by HRSA" and "subject to available funding," *e.g.* A31–62—*i.e.* an explicit *retention* of the agency's discretion.

serve an important screening purpose precisely to avoid the dangers of burdensome discovery, which "will push cost-conscious defendants to settle even anemic cases before reaching [later] proceedings." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "It is no answer" the Court explained, "to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . [a]nd it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage." *Id.* (observing "the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side") (quotation marks omitted).

The Court should heed these warnings. Crestview's complaint fails to plausibly allege the formation of a contract obligating HRSA to pay Crestview's outstanding claims. The "just, speedy, and inexpensive determination of" this action is dismissal, not discovery. RCFC 1.

A. <u>The UIP Terms And Conditions Do Not Obligate HRSA To Pay Crestview's Claims</u>

Crestview pins its case on the following bullet point in the UIP terms and conditions:

> The Secretary will reimburse the Recipient generally at 100 percent of Medicare rates (including any amounts that would have been due to the provider as patient cost sharing) for the items and services that Respondent provided to Uninsured Individuals for which the Recipient submits claims to the Uninsured Program Fund unless otherwise noted. If there is no Medicare standard rate, a calculated average rate will be used. Exclusions from coverage and alternatives to where Medicare rates do not apply are outlined in the program details.

A89;[3] *see* Resp. 1, 6, 13, 22, 24, 28. Specifically, Crestview focuses on the first six words—"the Secretary will reimburse the Recipient"—but ignores the context in which those words appear.

---

[3] Although Crestview acknowledges that different terms and conditions applied at different times, it does not specify which ones it contends govern the claims it seeks. Resp. 12–13 & n.4. Because, to the extent they were submitted at all, the claims Crestview seeks were likely submitted after December 17, 2021, it is the third set of terms and conditions that should govern. In any event, none of the terms and conditions obligate HRSA to pay Crestview's additional claims.

Contrary to Crestview's arguments, this bullet point does not obligate HRSA to pay any given submitted claim, much less claims that were never submitted, and therefore is insufficient for Crestview to state a plausible claim for relief in this case.

The full sentence in which those six words appear itself explicitly refers to "the Recipient submit[ting] claims," which Crestview undisputedly did not do for approximately $5 million that it seeks. A89; *see* MTD at 12, 22, 33–34; ECF 1 at ¶ 26, Case No. 8:23-cv-01913 (C.D. Cal.). That alone is sufficient to dispose of those claims.

This reference to the submission of claims further necessarily implicates HRSA's adjudication and approval process. That adjudication and approval process—which Crestview concedes in its complaint, ¶ 17, but entirely ignores in its response—both disposes of the bulk of Crestview's claims regardless of whether a contract could be formed, and forestalls contract formation. As we explained in our motion, Crestview pled no facts, much less facts that would plausibly suggest, that most of its claims were ever adjudicated or approved by HRSA. *See, e.g.*, MTD 25, 33–34. Its response does not remedy this failing; indeed, Crestview does not discuss the adjudication or approval of its claims at all.

Moreover, as our motion further explained, "[p]roviding that the application be subject to such approval is alone sufficient to negate existence of a contract until the approval is granted." *Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179, 1182 (Ct. Cl. 1971); MTD 27–28. Crestview, again, ignores this binding, and dispositive, precedent entirely, conceding its applicability. *See Melwood Horticultural Training*, 151 Fed. Cl. at 309–10.

But most fundamentally, this bullet point in the UIP terms and conditions only fixes HRSA's commitment to the *rate* of reimbursement, not the *fact* of reimbursement. That is, there is no dispute that *if* a claim is reimbursed, it "will" be paid "generally at 100 percent of Medicare

rates," or if "there is no Medicare standard rate, a calculated average rate will be used," subject to "[e]xclusions from coverage and alternatives to where Medicare rates do not apply." A89. But the rate of reimbursement is not what Crestview's suit challenges. Crestview does not, for example, claim that it should have received more than the approximately $100 million it got for the claims HRSA did adjudicate, approve, and reimburse because the applicable Medicare rates were higher than what HRSA used. Rather, Crestview's suit is predicated on an earlier threshold question—did HRSA breach a contractual obligation to reimburse *other* claims. The bullet point in the UIP terms and conditions does not address that threshold question; it does not obligate HRSA to reimburse any given claim, much less Crestview's specific claims.

As such, Crestview's complaint does not state a claim of breach of that provision of the terms and conditions (regardless of whether they can constitute a valid contract). *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("[A] breach of contract is a failure to perform a contractual duty when it is due."). And this language in the terms and conditions on which Crestview so heavily relies cannot help it avoid dismissal.

B. Crestview Fails To Demonstrate That It Plausibly Pled Each Element Necessary To Contract Formation

As we explained in our motion, to survive dismissal, Crestview must plead facts that would plausibly suggest the formation of a contract obligating HRSA to pay Crestview's additional claims and breach of a duty imposed by a validly formed contract. *See* MTD at Section III. Crestview does not dispute the elements of contract formation that it must plausibly plead "[t]o sustain its claim" or that failure to meet any one of those elements is sufficient to compel dismissal. Resp. 11. Our motion demonstrated that Crestview has failed to plausibly allege any of the required elements, and Crestview's response does not overcome the insufficiencies we identified.

### 1. Crestview Fails To Rebut That It Did Not Plausibly Allege An Unambiguous Offer Or Acceptance By HRSA To Pay Crestview's Claims

Crestview does not dispute that contract formation must begin with an unambiguous offer and acceptance. It argues that in this case the UIP terms and conditions constitute the offer, and Crestview's agreement to those terms and conditions, compliance with the terms and conditions, performance of the COVID-19 tests, and submission of claims, together, constitute acceptance of that offer. Resp. 14. That argument is logically unsound.

Contrary to the order in which Crestview lists its "acceptance" sequence, the performance of the tests must necessarily pre-date even the receipt of the terms and conditions by Crestview. There is no dispute that healthcare providers could only ever submit claims for *reimbursement after* the testing was performed; and the terms and conditions were provided and attested to at step 2 of the *claim* submission process—that is, after the testing was performed. *See* MTD 4–5. The resulting problem for Crestview is not that "[e]very contract requires the parties to perform in stages," Resp. 16, but rather that acceptance, by definition, cannot pre-date an offer. "Obviously, if there is no offer, there is nothing to accept." *Estate of Bogley v. United States*, 514 F.2d 1027, 1036 (Ct. Cl. 1975).

Thus, contrary to Crestview's assertion, because the "performance of work" had to predate the formation of any possible relationship with HRSA, it cannot constitute "evidence of the existence of [] a contract." Resp. 14. Put simply, performance cannot equal acceptance here. Indeed, HRSA had no input into who was being tested, by which providers, how many tests were performed, etc. Claims that were submitted were not automatically approved for reimbursement, and healthcare providers were not required to submit any claims, nor, crucially, were healthcare providers *required* to provide *any* testing to anyone in the first place. To be sure, the possibility of reimbursement through the UIP was meant to lower the barriers for uninsured individuals to

receive testing, but if Crestview thought the risks of not being reimbursed too high (notwithstanding the ~$100 million it in fact recovered), Resp. 14, it was free to put its efforts toward insured patients or those it would charge directly instead.[4]

Moreover, none of the actions identified by Crestview as "offer" or "acceptance" was sufficient to "conclude" the bargain because after claim submission there remains an adjudication and approval process, which Crestview concedes, as it must, is necessary before any reimbursement could be obligated. *See* Compl. ¶ 17; *but see Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (An "offer is made by 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'") (quoting Restatement (Second) of Contracts § 24).[5]

In short, the structure of the UIP is a far cry from the situation in the cases Crestview cites. *See* Resp. 14. In *Thomson v. United States* the parties were actively negotiating what was indisputably a contract: the plaintiff submitted a bid for his services, that proposal was specifically sent to, and approved by, the Attorney General to contract for the work, and the only thing missing was that the United States Attorney did not tell plaintiff that his contract had been authorized by the Justice Department. 357 F.2d 683, 687–88 (Ct. Cl. 1966). In *Silverman v. United States*, the plaintiff had a specific conversation with an official of the FTC—who had the "authority to approve vouchers for payment as representing charges for goods or services

[4] It is, frankly, implausible that Crestview's business model would be based entirely on uninsured patients or the UIP. During the relevant time period, only about 10% of the American population was uninsured. *See* "National Health Interview Survey," available at https://www.cdc.gov/nchs/data/nhis/health_insurance/TrendHealthInsurance1968_2023.pdf. At minimum, the equipment that Crestview touts as purchasing can be used both for other patients and other diseases. *See* Resp. 3; *see also*, *e.g.*, Cleveland Clinic, "PCR Test," available at https://my.clevelandclinic.org/health/diagnostics/21462-covid-19-and-pcr-testing.

[5] This approval process also disposes of Crestview's suggestion that the UIP established a *quid pro quo* where reimbursement was automatically guaranteed. *See* Resp. 30–31.

furnished to the FTC"—and who explicitly promised to pay plaintiff for particular transcripts that were being held c.o.d., but plaintiff then released to the FTC based on the promise of payment. 679 F.2d 865, 869, 871 (Ct. Cl. 1982). And in *OAO Corp. v. United States*, the Air Force gave the plaintiff a sole source opportunity to bid on a procurement, "issued a formal contract document memorializing the agreement," which plaintiff "executed," but the Air Force ultimately did not sign because a change in policy resulted in the cancellation of the procurement. 17 Cl. Ct. 91, 92 (1989). The Claims Court emphasized that the "circumstances of this case are unique," but found the existence of an implied in fact contract for start-up costs for the emergency work performed under the previously agreed-upon contract prior to the cancellation. *Id*. at 101–03.

In all these cases, the critical fact was not just the work performed by the plaintiff, but the indicia of the Government's promise to pay for that work in advance of performance and the understanding that performance was contingent on the promise. Indeed, in all three cases, there were easily-recognizable contract negotiations (or actual contracts) surrounding the implied-in-fact contract the Court ultimately found. Crestview has pled nothing of the sort here (and its response to our motion does not argue such facts)—the work it was performing was always independent of any involvement from HRSA at all. HRSA did not direct which patients would be tested, how many, by which providers, or whether or which claims were submitted.

2. Crestview Fails To Rebut That It Did Not Plausibly Allege Consideration For HRSA To Pay Crestview's Claims

Crestview also fails to demonstrate that it plausibly alleged consideration for the contract that it proposes. It claims consideration was in the form of Crestview purportedly "suffer[ring] a detriment" "by conducting over a million tests" and the Government purportedly "receiv[ing] a benefit in that it was able to respond to a national emergency." Resp. 17. Again, neither

argument passes legal muster.

First, Crestview suffered no detriment "*at the request of*" HRSA. Resp. 17 (emphasis added, quoting *Woll v. United States*, 45 Fed. Cl. 475, 477 (1999), *Estate of Bogley*, 514 F.2d at 1033, and 1 Williston, Contracts § 102 (1957)). Even if the Court were to assume that Crestview's decision to perform testing could be considered a detriment to Crestview, HRSA had no control over whether Crestview performed any tests. Moreover, there is no dispute that Crestview's performance of the tests had to be complete and fully performed *before* it could submit a claim for reimbursement or enter into any alleged contract with HRSA. But "[t]he general rule almost universally followed is that past consideration is no consideration." *Estate of Bogley*, 514 F.2d at 1033; *id*. at 1037 n.2 ("[P]ast services are not consideration.").

In any event, "in the context of government contracts . . . consideration must render a benefit to the government, and not merely a detriment to the contractor" because "government officials do not have authority to make contracts in which no benefit flows to the government." *Metzger, Shadyac & Schwarz v. United States*, 12 Cl. Ct. 602, 605 (1987); *see St. Bernard Parish Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017) (same). But, second, as we explained in our motion, HRSA did not receive a direct benefit sufficient for contract formation from Crestview's testing. Again, we do not dispute that encouraging uninsured individuals to be tested as part of the Government's response to the COVID-19 pandemic and lowering some of the barriers to those efforts was sound public health policy within HRSA's overall mission and therefore a laudable use of public funds. *See* MTD 22; Resp. 18. But the key question—as confirmed by the Federal Circuit's binding precedent in *El Centro v. United States*—is whether, but for Crestview's efforts, the United States Government would have been legally obligated to administer that testing to the uninsured individuals directly. 922 F.2d 816, 822–23 (Fed. Cir.

1990). It was not.

Although Crestview attempts to distinguish *El Centro* on the grounds that "the Government very clearly and publicly recognized a national emergency and decided it would assume the responsibility (and take a leading role) to get the Pandemic under the control," Resp. 18, that argument only highlights the insufficiency of Crestview's allegations. What remains missing is any legal hook obligating the Government to test *any* individual, and more specifically, those individuals for whose tests Crestview seeks reimbursement in this lawsuit. Addressing "a national emergency" is a sovereign "responsibility," but setting aside whether it would have been good policy, the simple fact is that contrary to Crestview's assertion, "the Government did not have to test everyone through its own resources" *regardless* of whether Crestview tested anyone at all. Resp. 19. And the Government did not, therefore, "avoid[]" any obligation "to set up its own testing or treatment facilities." *Id*. "Because the Government was not required to provide care to the [uninsured individuals], the care provided by [Crestview] benefited the [uninsured individuals], not the Government. Therefore, the Government received no consideration to support an implied-in-fact contract." *El Centro*, 922 F.2d at 823.

Crestview's attempts to distinguish the *St. Bernard Parish* decision similarly fail. *See* Resp. 19–20. Crestview appears to hinge its argument on a distinction between dealing with a potential "*future*" emergency and an existing "declared [] national emergency." Resp. 19 (emphasis in original).[6] Crestview does not explain why that distinction would matter from a consideration standpoint—contracts are routinely exchanges of promises of future behavior, and if helping the Government generally to reduce the scope of an emergency was sufficient for

[6] Notably, just like the UIP, under the cooperative agreement at issue in *St. Bernard's Parish* the Government reimbursed costs incurred for already performed work. 134 Fed. Cl. at 735.

consideration, the mere fact that the emergency might be in the future would not defeat it. But as the *St. Bernard Parish* Court correctly recognized, the "crucial distinction is between an *incidental* and a *direct* benefit." 134 Fed. Cl. at 736 (emphasis in original). Thus the question is not whether the testing of uninsured individuals was a "worthy project" or that the Government may have received an *incidental* benefit from such testing in support of its overall public health mission to "reign in the virus," Resp. 19; the problem for Crestview's claim is that the *direct* beneficiary of Crestview's efforts were the uninsured individuals receiving testing, *not* HRSA.

The *Algonac Mfg. Co. v. United States* case cited by Crestview is not to the contrary. Resp. 20–21. As Crestview recognizes, the "benefit" to the Government in that case was "clear" because plaintiff "had 'stored and cared for the [government's] property for 10 years.'" Resp. 21 (alteration in original, quoting 428 F.2d 1241, 1257 (Ct. Cl. 1970)). We do not dispute that caring for the Government's property can constitute a direct benefit to the Government. But Crestview's attempt to broaden that quite self-executing observation into an argument about receiving prior reimbursements, Crestview's ongoing expectations, or the Government's general desire for individuals to get tested cannot be sustained. *See* Resp. 21.

At the outset, none of those arguments have anything to do with consideration (or lack thereof). Moreover, the ~$100 million in claims that Crestview previously submitted and HRSA did adjudicate, approve, and reimburse are, by definition, not at issue. Crestview's subjective expectations are legally irrelevant because it is black-letter law "that the parties' objective, expressed intent—not their secret, subjective intent—controls whether a bargain has been struck." *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1053 (Fed. Cir. 2001). And as both the *Algonac* Court itself, and other binding precedent, expressly recognize, there can be no claim based on an implied-in-*law* contract with the United States. 428 F.2d at 1255–56 (explaining

that it does not have jurisdiction over claims based on a contract implied in law); *see* MTD 26–27. Thus, as our motion explained, even the "fact that the United States may benefit from the . . . services provided by [plaintiff] does not create an implied-in-fact contract to pay for those services." *City of Cincinnati v. United States*, 153 F.3d 1375, 1378 (Fed. Cir. 1998); *Trauma Serv. Grp.*, 104 F.3d at 1327 (no implied in fact contract to reimburse healthcare services received, even if they were considered to be to the benefit of the Government). Crestview's response, once again, entirely ignores these binding precedents we cited in our motion.

### 3. Crestview Fails To Rebut That It Did Not Plausibly Allege That Anyone With Actual Authority Bound HRSA To Pay Crestview's Claims

As we explained in our motion, contracts with the Government require "that the officer whose conduct is relied upon had actual authority to bind the government in contract" to the promise alleged to have been breached. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989); MTD Section III.A.3. Crestview does not dispute that rule, nor does it dispute that the risk of a Government agent lacking the necessary authority falls squarely on the private party. Instead, Crestview leans particularly hard into the idea that this legal requirement can be met now through "a general allegation" subject to further discovery. Resp. 22–26. The Court should reject Crestview's request to punt.

First, there can be no doubt that the Court can, and properly has, dismissed complaints at the initial pleading stage because plaintiff failed to plausibly allege authority. *Contra* Resp. 25–26. In *Trauma Services Group* plaintiff sought "reimbursement for the Government's use of [an] x-ray technician" in the course of a partnership between a military treatment facility and a civilian health care provider. 104 F.3d at 1323–24. The Court of Federal Claims dismissed, and the Federal Circuit affirmed, holding that "the trial court properly granted the motion to dismiss" for failure to state a claim because, *inter alia*, "[plaintiff] does not identify any particular

Government representative . . . who entered into the alleged implied-in-fact contract, let alone a Government representative who could have been duly authorized to do so." *Id*. at 1323, 1327. So too, in *Sin Hang Lee v. United States* this Court dismissed the case because, *inter alia*, the "the amended complaint does not plausibly allege authority to contract." 142 Fed. Cl. 722, 732–33 (2019). Again, the Federal Circuit affirmed, holding "that the trial court did not err in holding that [plaintiff's] amended complaint fails to allege that a [Government] employee had the requisite actual authority to enter into the alleged implied-in-fact contract." *Sin Hang Lee v. United States*, 819 F. App'x 908, 913 (Fed. Cir. 2020).

Notably, in both these cases plaintiffs offered far more by way of factual allegations than Crestview's conclusory pleading. *Compare Sin Hang Lee*, 819 F. App'x at 912–13 & *Trauma Serv. Grp.*, 104 F.3d at 1327 (both discussing, though rejecting, substantive theories of specific sources of authority), *with* Compl. ¶ 59. It would pervert the very foundation of pleading standards for Crestview to be put in a more advantageous position by saying less.

The *Sommers Oil Co. v. United States* case on which Crestview pins its hopes is also not to the contrary. As the block quote Crestview highlights demonstrates, the complaint in that case included specific factual allegations—who, what, and when—that allowed the Court to accept a reasonable inference of authority sufficient to survive a motion to dismiss. Resp. 24 (quoting 241 F.3d 1375, 1379 (Fed. Cir. 2001) (describing specific individuals making specific agreements and taking particular actions)). By contrast, Crestview's complaint offers nothing more than a naked legal conclusion that this authority existed. Compl. ¶ 59; *but see Iqbal*, 556 U.S. at 678. And Crestview's attempts to bolster that naked legal conclusion in its response only further confirm that dismissal is necessary.

First, Crestview's response states that "HHS officials, through their actions as contracting

agents for the United States, had the authority to bind the United States in contract to pay providers, including Crestview, for conducting COVID-19 testing of uninsured individuals though the UIP." Resp. 22. But the only citation Crestview offers for this statement is the unadorned legal conclusion in its complaint. Compl. ¶ 59. Moreover, "contracting agents [with] authority to bind the United States in contract" are called "contracting officers" and that is a defined and regulated position. *See* FAR 1.602-1. Within HHS, the regulations further dictate that "[t]he Government is not bound by agreements with, or contractual commitments made to, prospective contractors by individuals who do not have delegated contracting authority." HHSAR 301.602-3. And the head of contracting activity is the *only* official theoretically permitted to ratify an unauthorized commitment—subject to coordination with the Office of General Counsel, General Law Division, and the Senior Procurement Executive—though even then, "the Government may not be able to ratify certain actions." *Id*. Crestview pleads no allegations that it ever received any promises of payment from a contracting officer, or through the head of contracting activity at HHS.

Notably, although not demarcated as a quote, Crestview appears to have lifted its "contracting agent" language from the *Laudes Corp. v. United States* case that it later cites. *Compare* Resp. 22, *with* 86 Fed. Cl. 152, 164 (2009). But there was no question in the *Laudes* case that this language referred to known, actual, properly appointed contracting officers. 86 Fed. Cl. at 154 ("The documents before the Court reflect that . . . [t]he United States appointed its own Contracting Officer, as well as a Contracting Officer's representative, and a State Department representative allegedly invoked an $8,000,000 cost ceiling on the work."). And the Court relied on the *factual* allegations in the complaint—the *fact* of the State Department official capping funds—as sufficient to survive a motion to dismiss. *Id*. at 164. By contrast, when it

comes to authority, Crestview pleads no factual allegations.

Second, Crestview's response identifies then-Secretary Becerra as the individual on whose authority Crestview relies by virtue of his authorizing the UIP more broadly. *See* Resp. 22–24. That argument proves too little and too much. At some level, *everything* HHS does must be authorized by the Secretary (or his designees)—that is where the buck stops—and there is no dispute that the Secretary authorized the existence of the UIP and exercised his discretion to allocate funding to that program. But that does not help Crestview here. As the case Crestview itself relies on confirms, Crestview must allege facts that would plausibly suggest that the Secretary "commit[ted] the government *to the contractual undertaking that [plaintiff] is trying to enforce*." *Sommers Oil*, 241 F.3d at 1379 (emphasis added). Crestview offers *no* facts to suggest that Secretary Becerra authorized the payment of Crestview's specific claims here. Indeed, the allegations in the complaint "and through documents fairly incorporated" therein, Resp. 24, demonstrate the opposite: Crestview's claims were either not submitted for consideration, not adjudicated or approved, or paused and reversed in accordance with the standard operating procedures for placing providers on hold. *See* MTD 9–12.

4. Crestview Fails To Rebut That It Did Not Plausibly Allege That HRSA Intended To Be Contractually Bound To Pay Crestview's Claims

We also explained in our motion that Crestview's complaint fails to plausibly allege that HRSA made a voluntary and knowing undertaking obligating the Government to pay Crestview's claims, which is the necessary threshold condition for contract formation. *See* MTD Section III.A.4. Crestview first responds that "circumstantial and documentary evidence may be used to support an intent to contract by an agency." Resp. 12. That observation is true as far as it goes but does not help Crestview here. As the Federal Circuit has made explicit, it is the *quality* not the *quantity* of the evidence and allegations that matters. *D & N Bank v. United*

*States*, 331 F.3d 1374, 1377–78 (Fed. Cir. 2003). "Although a contract may arise as a result of the confluence of multiple documents, there must still be a clear indication of intent to contract and the other requirements for concluding that a contract was formed." *Id*. at 1378. It is that "clear indication of intent to contract" that Crestview is missing.

That is, the "circumstantial and documentary evidence" Crestview points to—the webinars and public information campaign about the UIP and the terms and conditions associated with participating in the UIP—demonstrate "invitations, or instructions from the government" or "statements of information or definition" which "are not statements of obligation" by HRSA to pay any given future claim nor "offers to contract that can bind the government." *Chattler v. United States*, 632 F.3d 1324, 1330 (Fed. Cir. 2011); *Sin Hang Lee*, 142 Fed. Cl. at 731 (collecting cases).

Crestview does not address the Federal Circuit's *Chattler* decision at all, and although Crestview tries to distinguish *Sin Hang Lee* on its facts, it ignores the body of case law supporting the principle applied in that case. *See* Resp. 15–16. In particular, the *Sin Hang Lee* Court cited *XP Vehicles, Inc. v. United States*, where plaintiffs alleged a breach of an implied in fact contract because they submitted what they claimed to be "meritorious" loan applications that were denied allegedly "because of corrupt political influence." 121 Fed. Cl. 770, 774 (2015). As the Court explained in dismissing the complaint, "there is nothing inherent in an agency's invitation to the public to apply for a loan that constitutes an offer to contract, or that forms the basis for a contract once an application is submitted, even if the application criteria are ostensibly met." *Id*. at 785–86 (collecting cases). That observation similarly disposes of Crestview's claims here: that HRSA, undisputedly, invited healthcare providers to submit claims to the UIP is legally insufficient to form a contract even if Crestview had submitted ostensibly reimbursable claims.

Crestview's further argument that "this Court has recognized that terms and conditions . . . *can* serve as the basis for an express or implied contract with the United States," Resp. 17 (emphasis added), is facially insufficient to establish that HRSA intended to contractually bind itself to pay Crestview's claims here. Indeed, the sole case Crestview cites in support is easily distinguishable. In *Thermalon Indus. v. United States*, the "plaintiff submitted an offer in response [to a solicitation], [the Government] issued an award," and plaintiff then began working on the grant project subject to the terms of that grant award. 34 Fed. Cl. 411, 415 (1995). The Court found that those terms and conditions—governing the award made to plaintiff—could contractually constrain the parties' interactions with respect to that issued grant. *Id*. But there is no dispute that the UIP terms and conditions similarly imposed binding obligations on Crestview with respect to its paid claims, *e.g.* complying with HRSA's audit requests. What the UIP terms and conditions do not evidence is an undertaking by HRSA to pay additional future claims.

The upshot of Crestview's argument here is that HRSA was obligated—in mandatory and/or contractual terms—to reimburse an *unbounded* number of COVID-19 tests for uninsured patients. HRSA did not direct or have any control over how many tests were performed, when, by whom, or what claims were submitted. It is implausible on its face—and directly contradicted by Congress's finite funding appropriation, the Secretary's undisputed discretion in allocating those finite funds, HRSA's repeated emphasis that the program was "subject to available funding," *e.g.* A3, A11–12, A18, A31–62, A98–99, and the claim adjudication process itself—that any agency would make such a commitment or that Congress would compel it to.

IV. <u>Crestview Cannot Sidestep The Consequences Of The Fiscal Responsibility Act</u>

Finally, Crestview argues that the Fiscal Responsibility Act—rescinding the unobligated funds from the appropriations used to support the UIP—is "not relevant" and that Crestview's mere pronouncement that the payments it seeks "are obligated" claims is sufficient to proceed to

discovery. Resp. 29–31. Crestview is wrong on both counts.

Crestview insists that the Fiscal Responsibility Act is irrelevant because its claims were obligated. Resp. 30, Compl. ¶ 18. But that argument implicitly concedes that if its claims stood unobligated upon the passage of the Fiscal Responsibility Act the case should be dismissed. Indeed, alongside attesting to the terms and conditions—the core foundation upon which all its arguments rest—Crestview explicitly agreed that it "further underst[ood] that reimbursement is subject to available funding for the program." A98–99. And HRSA's other public outreach also repeatedly made that limitation explicit. *See* A3, A11–12, A18, A31–62.

Meanwhile, the only "fact" Crestview pleads or argues from which it asks the Court to infer that its claims were obligated is one that is directly contradicted by the underlying document and Crestview's other allegations. Crestview argues that "HRSA characterized the failure to pay Crestview for the submitted claims as a 'payment pause' indicating that the payments were in progress, and thus obligated." Resp. 30; *see* Resp. 31 (making the same argument with respect to the reversed payments). In fact, HRSA expressly told Crestview that it had paused or reversed "processing" Crestview's "pending claims." A105; Compl. ¶ 38; *see also Terry v. United States*, 103 Fed. Cl. 645, 652 (2012). Thus, the pause indicated the opposite—that no further claims could become obligated while Crestview was on hold.

At bottom, Crestview fails to plead facts that would plausibly suggest that any of its claims were obligated at the time the Fiscal Responsibility Act took effect. As we explained in our motion Crestview never submitted ~$5 million; ~$56 million were paused in processing before adjudication and another ~$3.6 million were stopped before obligation; and ~$3.4 million were de-obligated and reversed. *See* MTD 12.

<u>CONCLUSION</u>

For the foregoing reasons, and those in our motion, the case should be dismissed.

Respectfully submitted,

BRETT A. SHUMATE
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Corinne A. Niosi
CORINNE A. NIOSI
Assistant Director

s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

*Attorneys for the United States*

OF COUNSEL

TAMARA CLARK
SUZANNE YURK
National Complex Litigation and
Investigations Division
Office of the General Counsel
U.S. Dept. of Health & Human Services

February 21, 2025